United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 16, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 06-30655

————————

JOHN E PARK,

Plaintiff - Appellant,

versus

STOCKSTILL BOAT RENTALS INC,

Defendant - Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

Before REAVLEY, GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this admiralty case, seaman John E. Park ("Park") appeals the district court's grant of summary judgment in favor of his employer, Stockstill Boat Rentals, Inc. ("Stockstill"), on Park's action under the Jones Act and general maritime law to recover damages for personal injuries suffered while he was working aboard Stockstill's vessel.

Park was employed by Stockstill to captain the MISS SISSY ("the vessel"), a 38-foot crew boat charged with carrying supplies to oil rigs off the southern coast of Louisiana. On the morning of October 26, 2004, Park was reaching to open the engine compartment door of the MISS SISSY

when he slipped and fell backward, injuring his back. Park sued Stockstill for damages relating to these injuries. He first claims that Stockstill is liable under the Jones Act for negligence as a matter of law. According to Park, Stockstill violated 46 U.S.C. § 8104(b) and the MISS SISSY's Certificate of Inspection by requiring him to work all night, alone on the vessel; as a result, he claims he suffered fatigue, which caused him to slip and fall the next morning, injuring his back. Park also claims that the MISS SISSY was unseaworthy because its decking was covered with faded, old paint and that this unseaworthy condition caused him to fall and injure himself.

The district court granted Stockstill's motion for summary judgment on the grounds that "this accident was caused totally and completely by the negligence of the plaintiff himself." We review the district court's grant of summary judgment *de novo*. *Honeywell Intern., Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 434 (5th Cir. 2005). We affirm only when there is no genuine issue of material fact and Stockstill is entitled to judgment as a matter of law. *Id*. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

After a close review of the record, we conclude that Park has not identified a genuine issue of material fact that, if proved, would satisfy the threshold element of his Jones Act claim. The Jones Act allows an injured seaman to sue his employer for personal injuries suffered as a result of the employer's negligence. *See* 46 U.S.C. § 30104(a). Under the doctrine of negligence *per se*, a Jones Act employer may be liable if its violation of a statutory duty causes injury to its seaman-employee. *See Kernan v. American Dredging Co.*, 355 U.S. 426 (1958); *Dougherty v. Santa Fe Marine, Inc.*, 698 F.2d 232, 234 (5th Cir. 1983). In order to establish negligence *per se*, Park must show, as a threshold matter, that his employer violated a statute or Coast Guard regulation. *See Smith v. Trans-*

*World Drilling Co.*, 772 F.2d 157, 160-61 (5th Cir. 1985) (citing *Reyes v. Vantage S.S. Co., Inc.*, 558 F.2d 238, 242-44 (5th Cir. 1977), *modified* 609 F.2d 140 (1980)) (listing the five elements of a Jones Act negligence *per se* claim).

The record in this case is devoid of evidence that Stockstill violated a statute or Coast Guard regulation. While Park asserts that Stockstill violated 46 U.S.C. § 8104(b)'s requirement that "a licensed individual . . . not be required to work more than . . . 12 of 24 hours at sea, except in an emergency when life or property are endangered," he has presented no evidence that Stockstill actually required him to work more than twelve hours. Park's deposition reveals that he picked up a box of supplies from the dock dispatcher around 6:00 p.m. on the evening before the accident. The dispatcher told Park to take the supplies to an oil rig "as soon as [Park] could get it out there." Park then chose to make run to an oil rig, alone and in the dark. Unfamiliar with the waters, Park ran the MISS SISSY onto a sandbar. Unable to contact the rig or the dock for help, he kept watch overnight in order to make sure the vessel did not dislodge and drift or collide with a larger ship. Park relies on the fact that he was working or standing guard for twenty-four straight hours as evidence that Stockstill violated its statutory duty under § 8104(b).

At most, Park has shown that he was working or awake for twenty-four straight hours the night before the slip and fall. The statute, however, does not prohibit a seaman from working for more than twelve hours in a row; it prohibits an employer from "requiring" a seaman to work more than twelve hours in a row. *See* 46 U.S.C. § 8104(b). Neither Park's deposition, nor any other evidence in the summary judgment record, indicates that Stockstill "required" (or even requested) Park to take this box of supplies to an oil rig at night, let alone that Stockstill required Park to work all night on the sandbar. Moreover, there is no evidence that Stockstill even knew that Park was

making runs at night or that he had run aground. *Cf. Billedeaux v. Tidex, Inc.*, No. 93-3112, 3 F.3d 437, 1993 WL 347039, at *2 (5th Cir. Aug. 13, 1993) ("[A] plaintiff must show that a shipowner had actual or constructive knowledge of the dangerous condition that injured the plaintiff."). Therefore, Park has not shown a genuine issue of material fact to support his assertion that Stockstill "required" him to work in violation of 46 U.S.C. § 8104(b).

For these same reasons, Park has not shown that a genuine issue of material fact exists on his assertion that Stockstill violated the MISS SISSY's Certificate of Inspection, which requires more than one crewmember if the vessel is away from a shoreside dock for more than twelve hours in any twenty-four hour period. *See* 46 U.S.C. § 8101(d) ("A vessel . . . may not be operated without having in its service the complement required in the certificate of inspection.").[1] An owner does not violate a vessel's manning requirement "when a vessel is deprived of the service of a member of its complement without the consent, fault, or collusion of the owner." *Id.* § 8101(e). On the contrary, when the owner does not know that the vessel may be in violation of the Certificate of Inspection's manning requirements, the master of the vessel is given the responsibility to comply. *See id.* Here, the record indicates that Park himself was the only one aware that the MISS SISSY was away from a shoreside dock for more than twelve hours. Nothing in the record suggests that Stockstill directed Park to take the MISS SISSY away from a shoreside dock for more than twelve hours without another crewmember. Rather, the record contains evidence that Stockstill asked Park to run only short jaunts to oil rigs, with the longest distance being an eleven-hour trip between bays. There is

---

[1] Violating the Certificate of Inspection—like any other statute or regulation—can amount to negligence *per se*. *See* 46 U.S.C. § 3313(a) (requiring compliance with a vessel's Certificate of Inspection).

no evidence that Stockstill had any knowledge that Park made a run to a rig at night, nor that Park had run aground on a sandbar overnight. Thus, the summary judgment record does not support Park's claim that Stockstill violated the Certificate of Inspection's manning requirements.[2]

We also reject Park's general maritime claim that the MISS SISSY was unseaworthy. A vessel is unseaworthy only if it presents an unreasonable risk of harm to the seaman. *See, e.g.*, *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960); *Bommarito v. Penrod Drilling Corp.*, 929 F.2d 186 (5th Cir. 1991). The owner is not "obligated to furnish an accident-free ship." *Mitchell*, 362 U.S. at 550. Rather, seaworthiness requires only that "a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347 (5th Cir. 1988) (citing *Mitchell*, 362 U.S. at 550).

Park presents no evidence that the MISS SISSY was not reasonably suited for the purpose

---

[2] We also reject Park's barely-briefed contentions that Stockstill violated two additional provisions of the Certificate of Inspection. First, Park asserts that his transit on the Intercoastal Waterway and the Mississippi River—which took place two days before the alleged slip and fall—violated the vessel's Certificate of Inspection limiting the vessel's navigational route to "lakes, bays, and sounds." The Intercostal Waterway and the Mississippi River were not outside the MISS SISSY's limits because a vessel is permitted to operate on a "route of less severity" than that specified in the Certificate of Inspection, *see* 46 C.F.R. § 176.110(b), and rivers are considered a route of less severity than "lakes, bays, and sounds." *Id.*

Second, Park claims that Stockstill violated the Certificate of Inspection's provision limiting the vessel's runs to thirty minutes. Assuming *arguendo* Stockstill did violate the thirty-minute run provision, Park has not presented a scintilla of summary judgment evidence that would link this violation to his slip-and-fall accident, and thus has not met the elements of his negligence *per se* claim. *See Smith*, 772 F.2d at 160-61 (listing "causation" as the fifth element of a Jones Act negligence *per se* claim)*; Abshire v. Gnots-Reserve, Inc.*, 929 F.2d 1073, 1076-77 (5th Cir. 1991) ("Under the Jones Act, a defendant must bear the responsibility for any negligence, however slight, that played a part in producing the plaintiff's injury . . . ." However, "summary judgment is nevertheless warranted when there is a complete absence of proof of an essential element of the nonmoving party's case."). Park's deposition gives only two reasons for his fall: "fatigue," caused by working more than twelve-hours as a time, and "faded, old paint" on the vessel's deck. Nothing in the record suggests that a longer-than-thirty-minute run might have caused his fall.

or use for which it was intended. Although he testified in his deposition that the MISS SISSY's diamond plate deck was painted with faded, old paint, Park offers no evidence that the condition of the paint rendered the vessel unseaworthy. He does not present any evidence—such as from an expert in ship maintenance, for example—that the paint was unsafe or not reasonably suited for the deck's purpose. *Cf. Rogers v. Eagle Offshore Drilling Serv., Inc.*, 764 F.2d 300, 304 (5th Cir. 1985) ("Clearly a plaintiff must present sufficient evidence to raise a jury question whether a method of operation is unsafe, before a fully equipped vessel, with all its gear in good working order, can be rendered unseaworthy."). In other words, there is no evidence that the old, faded paint was dangerous. Rather, Park testified in his deposition that the slippery substance on the deck was the "morning dew." Uncontroverted evidence shows that the MISS SISSY was equipped with a deck that had raised diamond plates to provide traction, and Park presents nothing to indicate that these raised diamond plates were not reasonably suited for the deck's purpose. It is not enough for Park to rest on mere conclusory allegations or denials in his pleadings. *Topalian v. Ehrman*, 954 F.2d 1125, 1131, 1137 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Park must point out, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every component of his case. *Dunn v. State Fire & Cas. Co.*, 927 F.2d 869, 872 (5th Cir. 1991). Park's mere assertion that the MISS SISSY's paint was old and faded is insufficient to raise a fact issue on whether the paint rendered the vessel unseaworthy.

Because Park has not put forth any evidence to satisfy the threshold elements of his Jones Act and unseaworthiness claims, we affirm summary judgment without reviewing the district court's holding that these alleged violations could not have caused Park's injuries. *See Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001) (*citing Tex. Refrig. Supply, Inc. v. FDIC*, 953

F.2d 975, 980 (5th Cir. 1992)) (affirming summary judgment on any ground supported by the record, even if it is different from that relied on by the district court).

AFFIRMED.