# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 3, 2012

Lyle W. Cayce
Clerk

No. 10-31063

LEON MANDERSON,

> Plaintiff - Appellant - Cross-Appellee

v.

CHET MORRISON CONTRACTORS, INCORPORATED,

> Defendant - Appellee - Cross-Appellant

Appeals from the United States District Court
for the Western District of Louisiana

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge.

Leon Manderson challenges the denial of his claims under the Jones Act and general maritime law and of his costs; Chet Morrison Contractors, Inc. (CMC), challenges the amount Manderson was awarded for cure and his being awarded attorney's fees, including the amount. Primarily at issue are: the district court's application of the collateral-source rule in determining the amount of cure awarded Manderson; and the court's finding CMC's maintenance-and-cure denial was arbitrary and capricious, resulting in Manderson's being awarded attorney's fees. AFFIRMED in part; MODIFIED in part; VACATED in part; REMANDED for entry of judgment consistent with this opinion.

No. 10-31063

I.

In November 2006, Manderson began working for CMC as a licensed engineer aboard a CMC dive vessel, the M/V JILLIAN MORRISON, operating in the Gulf of Mexico. In January 2008, Manderson, aboard another CMC dive vessel, left it abruptly and was hospitalized, receiving treatment for ulcerative colitis, diabetes, and a liver condition. He did not return to work.

That June, Manderson filed this action. He maintained CMC was liable under the Jones Act, 46 U.S.C. § 30104, *et seq.*, for violating various work-hours statutes and Coast Guard safety regulations, contending these violations constituted negligence *per se*. He also claimed relief under general maritime law, maintaining the JILLIAN MORRISON was rendered unseaworthy by CMC's violation both of manning statutes and of its certificate of inspection, and by failing to repair the vessel's marine sanitary device. Manderson requested: general damages for Jones Act negligence, the unseaworthiness of the JILLIAN MORRISON, exacerbation of his ulcerative colitis, the removal of his colon, and his diabetes diagnosis; special damages for treatment of his medical conditions and lost earnings; and maintenance and cure, including all medical expenses incurred since 24 January 2008 (with no deduction for medical payments by Manderson's insurer), cost-of-living expenses recoverable under *Hall v. Noble Drilling*, 242 F.3d 582 (5th Cir. 2001) (food and lodging), and attorney's fees for CMC's claimed arbitrary-and-capricious denial of maintenance and cure.

CMC demanded a jury trial. Before trial, the district court, *inter alia*: granted summary judgment to CMC against Manderson's claim for maintenance, cure, and damages relating to his Hepatitis C and his alleged need for a liver transplant, finding no medical evidence linking that condition with his CMC employment; granted Manderson's motion *in limine*, excluding evidence of medical expenses paid by Manderson's insurer; granted his motion to amend his complaint pursuant to Federal Rule of Civil Procedure 9(h) (permitting

2

No. 10-31063

designation of claims as admiralty or maritime and, consequently, negating right to jury trial), and his corresponding request to change from a jury, to a bench, trial; and granted his motion to add a punitive-damages claim regarding CMC's denial of maintenance and cure, but denied his motion to add such a claim regarding CMC's termination of Manderson's group-health insurance.

After a two-day bench trial, the district court denied relief under the Jones Act and general maritime law, but awarded maintenance and cure and attorney's fees incurred in obtaining that relief. *Manderson v. Chet Morrison Contractors, Inc.*, No. 08-CV-881, 2010 WL 3035491 (W.D. La. 2 Aug. 2010) (First Opinion). The court subsequently ruled CMC was liable for $14,680 for maintenance and $169,691.06 for cure. Second Amended Reasons for Judgment, 30 Sept. 2010 (Second Opinion). Regarding its attorney's-fees finding in the First Opinion, the court found CMC had acted "in an arbitrary and capricious manner in failing to pay maintenance and cure" and, as a result, awarded Manderson $110,950 in attorney's fees and costs on those claims. *Id.* Later, the court denied the parties' Federal Rule of Civil Procedure 54(d) motions for costs, explaining, regarding Manderson's request: he had already been awarded costs on his successful maintenance-and-cure claims, and no other costs would be awarded because he did not prevail on other claims. Ruling on Costs, 2 Feb. 2011 (Third Opinion).

## II.

Manderson challenges denial of his claims under the Jones Act and general maritime law and of his costs. CMC challenges the amount awarded for cure; attorney's fees being awarded; and the amount of that award. Not challenged are Manderson's being awarded maintenance and cure and his *not* being awarded punitive damages, in addition to attorney's fees, regarding CMC's maintenance-and-cure denial.

3

No. 10-31063

Evidence for the bench trial included: testimony from Manderson, Captain Plain (worked aboard JILLIAN MORRISON with Manderson), DeBlieux (CMC representative), Commander Sharpe (CMC's expert on vessel operation, manning, and Coast Guard regulations), and Captain Billiot (worked aboard JILLIAN MORRISON before Manderson); depositions of Guiliani (clerk, wiper, and oiler aboard JILLIAN MORRISON who assisted Manderson in engine room), Leonard (worked briefly as Manderson's replacement as engineer aboard JILLIAN MORRISON), and physicians who treated Manderson; and the JILLIAN MORRISON vessel logs, Manderson's medical and insurance records, and correspondence between CMC and Manderson regarding payment of his medical bills.

"In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52(a)(1). "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous"; and, especially critical in this instance, "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility". *Id.* 52(a)(6).

"In a bench tried admiralty case, a district court's [rulings] concerning negligence and causation are findings of fact [and, consistent with Rule 52(a)(6),] reviewable by this court only for clear error." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303 (5th Cir. 2008). "A finding is clearly erroneous when the appellate court, viewing the evidence in its entirety, is left with the definite and firm conviction that a mistake has been made." *Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 258-59 (5th Cir. 2006) (citation and internal quotation marks omitted). Re-stated, our court may not find clear error "[if] the district court's finding is plausible in light of the record as a whole", even if this court "would have weighed the evidence differently". *Id.* at 258.

4

No. 10-31063

A.

As discussed, Manderson challenges denial of his Jones Act and general-maritime-law claims.  He asserts CMC is liable under the Act for violating various regulations, contending these violations constitute negligence *per se*. In seeking relief under general maritime law, he maintains the JILLIAN MORRISON was unseaworthy. Review is for clear error.  *E.g.*, *Cenac Towing, Inc.*, 544 F.3d at 303 (Jones Act claims);  *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001) (unseaworthiness claim).  Based on our review of the record, we are *not* left with requisite "definite and firm conviction that a mistake has been made".   Accordingly, the findings denying these claims are not clearly erroneous.

1.

"The Jones Act allows an injured seaman to sue his employer for personal injuries suffered as a result of the employer's negligence." *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 602-03 (5th Cir. 2007) (citing 46 U.S.C. § 30104(a)). "Under the doctrine of negligence *per se*, a Jones Act employer may be liable if its violation of a statutory duty causes injury to its seaman-employee." *Id.* at 603.   Manderson sought negligence-*per-se* recovery under the Jones Act, presenting the following claims:  (a) CMC failed to provide him with rest periods, as mandated by 46 C.F.R. § 15.1111(a); (b) it failed to provide personnel, qualified under 46 C.F.R. § 15.1103(c), to relieve him from duty and allow him to rest; and (c) it failed to post a watch schedule, in violation of 46 C.F.R. § 15.1111(g).

a.

Regarding the claim that CMC failed to provide Manderson with the rest periods required by 46 C.F.R. § 15.1111(a), that regulation provides:

No. 10-31063

> Each person assigned duty as officer in charge of a navigational or engineering watch, or duty as a rating forming part of a navigational or engineering watch, on board any vessel that operates beyond the Boundary Line shall receive a minimum of 10 hours of rest in any 24-hour period.

The district court ruled the evidence presented by Manderson not sufficient to find CMC violated 46 C.F.R. § 15.1111(a), stating he "failed to provide [it] with any evidence of [his] work schedule while on board the M/V JILLIAN MORRISON". First Opinion, 2010 WL 3035491, at *4. The court noted: although Manderson "testified that he worked sixteen to eighteen hours per day, the [court] was not provided any objective evidence regarding his work schedule". *Id.*

Manderson contends: the court erred because it failed to acknowledge CMC's testimony, as well as that of former JILLIAN MORRISON personnel Captain Billiot, clerk and engine-room assistant Guiliani, and engineer Leonard, that: CMC worked JILLIAN MORRISON engineers an average of 16-18 or more hours per day, without adequate relief; Manderson worked virtually alone his first five months aboard the vessel and remained on-call 24 hours a day; and, in any event, he could not have offered time records at trial because CMC did not keep them for its engineers.

Among other evidence on this issue, Manderson testified: he never kept a log showing he worked more than 12 hours per shift; he voluntarily worked long hours because he wanted to make more money and improve the vessel; and, when the CMC office instructed him to work a 12-hour shift, with Guiliani working the other 12-hour shift, Manderson refused to do so. Commander Sharpe, CMC's expert on Coast Guard regulations, testified: as a chief and licensed engineer, Manderson was ultimately responsible for ensuring he got enough rest. And Captain Plain, who served with Manderson aboard the JILLIAN MORRISON, testified: Manderson set his own hours; he never

6

observed Manderson working more than 12 hours per shift; and Manderson never complained about his work schedule.

b.

For the claim that CMC failed to provide qualified personnel to relieve Manderson from duty, as mandated by 46 C.F.R. § 15.1103(c), that regulation provides:

> [N]o person may employ or engage any person to serve, and no person may serve, in a rating forming part of a watch in a manned engine-room, nor may any person be designated to perform duties in a periodically unmanned engine-room, *except for training or for the performance of duties of an unskilled nature*, unless the person serving holds an appropriate, valid [International Convention on Standards of Training, Certification and Watchkeeping for Seafarers] certificate or endorsement in accordance with part 12 of this chapter.

(Emphasis added.) The district court ruled against this claim because Manderson failed to present evidence of his work schedule but stated, had he done so, "the Court may have found that [CMC] was in violation of this regulation by providing [Manderson] with [able-bodied seamen] instead of skilled help in the engine room". First Opinion, 2010 WL 3035491, at *5.

Manderson contends the court erred because: proof that CMC violated the regulation is not contingent upon showing excessive work hours; and Manderson, Captain Billiot, and ship's clerk and engine-room assistant Guiliani testified CMC assigned unskilled deck crew as Manderson's relief.

The record reflects that, generally, CMC assigned crew to Manderson to perform duties "of an unskilled nature", *see* 46 C.F.R. § 15.1103(c), such as checking the automated engine room when Manderson was not present. (An automated engine room is one monitored by alarm systems and sensors, so that the vessel can be safely operated without having someone in the engine room at all times.) The only evidence showing the assistants may have done anything

7

more than unskilled-nature work was when Manderson trained and assigned them to do so, or when Guiliani, who had experience repairing helicopter motors in the Army, became an oiler and CMC assigned him to split shifts with Manderson. Moreover, Manderson testified: the crew assigned to assist him were "qualified, capable, and competent"; and he would have relieved them of their duties were they otherwise. Additionally, Commander Sharpe—CMC's expert on vessel operation, manning, and Coast Guard regulations—testified that the JILLIAN MORRISON was properly manned, in accordance with Coast Guard regulations and the vessel's certificate of inspection (COI).

c.

Regarding the claim that CMC failed to post a watch schedule, in violation of 46 C.F.R. § 15.1111(g), that regulation provides:

> The Master shall post watch schedules where they are easily accessible. They must cover each affected member of the crew and must take into account the rest requirements of this section as well as port rotations and changes in the vessel's itinerary.

The district court found that CMC "fail[ed] to post watch schedules which would have informed [Manderson] of when he was to rest". First Opinion, 2010 WL 3035491, at *5. Nevertheless, the court found it was not "practical within *this industry* for masters of vessels manned with such a *small crew* to post a rest schedule". *Id.* (emphasis added).

Manderson contends: the court erred in finding 46 C.F.R. § 15.1111(g) did not apply to Manderson's vessel; and the regulation does not exempt from its application "this industry", the dive-vessel industry, or vessels with "small crews".

The JILLIAN MORRISON's COI, issued by the Coast Guard, provides the "vessel may operate with: one (1) master, one (1) chief engineer, one (1) able seaman, one (1) licensed mate, [and] one (1) ordinary seaman". Commander

No. 10-31063

Sharpe testified: watch was not required for the JILLIAN MORRISON's engine room because it was an unmanned engine room; rather, the engine room was monitored on an "on-call" basis, a less-demanding status for which there were no Coast Guard regulations; and the vessel was in full compliance with Coast Guard watch requirements.

Moreover, even if this regulation was applicable, the district court found that its violation could not have *caused* the claimed injuries from lack of rest. The court reasoned: "[Because] it was ultimately up to the crew members to rest as they saw needed[,] [t]he Court cannot assume that the posting of a watch schedule would have compelled [Manderson] to rest more". First Opinion, 2010 WL 3035491, at *5.

d.

Regarding his Jones Act claims, Manderson asserts: under the Act, an employee's claimed contributory negligence is disregarded where a safety-statute violation contributes to the employee's injuries; the district court erred in finding Manderson totally responsible for his injuries by negligently remaining on call 24 hours a day; and the court erred in failing to shift to CMC the burden of showing its statutory or regulatory violations could not have caused, or exacerbated, Manderson's medical problems.

As discussed, the district court did not clearly err in finding Manderson did not establish a violation of any statute or Coast Guard regulation. Therefore, it was not necessary to address negligence *per se*, comparative fault, or burden shifting.

2.

In seeking recovery under general maritime law for unseaworthiness, Manderson contests the rejection of his claim that the JILLIAN MORRISON was unseaworthy due to CMC's failure to man it with the crew required by the vessel's COI. (In addition, he makes several references to the vessel's marine

sanitary device, asserting that it was defective and that he routinely removed overflowed sewage.  Although evidence on this point was presented at trial, Manderson does not link this to claimed unseaworthiness.  Accordingly, this point is waived for inadequate briefing. FED. R. APP. P. 28(a)(9)(A).)

To be seaworthy, a vessel and its appurtenances must be reasonably fit for their intended uses. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). Included among the numerous reasons for which a vessel can be unseaworthy is that "her crew [is] unfit" or "[t]he number of men assigned to perform a shipboard task [is] insufficient". *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).  Plaintiff bears the burden of establishing unseaworthiness and that it caused his injuries. *Garcia v. Murphy Pac. Marine Salvaging Co.*, 476 F.2d 303, 305 (5th Cir. 1973).

Manderson contends:  the vessel lacked a mate required by its COI, as well as additional qualified engine-room personnel; CMC's decision to operate its vessel without having a scheduled, licensed, competent person on board who could fully relieve Manderson rendered the vessel unseaworthy; and the district court's finding it could not find the vessel unseaworthy due to a "minor violation of the COI" is clearly erroneous.

Commander Sharpe testified:  even under the most restrictive reading of the JILLIAN MORRISON's COI, only one chief engineer was required aboard the vessel; the COI did *not* require any other crew for the engine room; and the vessel was manned in accordance with its COI.

When referring to CMC's "minor violation of the [COI]", First Opinion, 2010 WL 3035491, at *6, the district court was apparently referring to its earlier finding that the COI required, *inter alia*, two licensed mates, and that there was "evidence to support a finding that [CMC] only equipped its vessel with one mate". *Id.*  The court rejected this violation as a ground for Manderson's unseaworthiness claim—a finding on causation—because: "[Manderson] claims

10

that only the improper manning of the engine room is what caused his alleged injuries, not the manning of the deck". *Id.* The standard for establishing causation for an unseaworthiness claim is demanding. *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 162 (5th Cir. 1985) (unseaworthiness claim requires showing "(1) the unseaworthiness played a substantial part in bringing about or actually causing the injury and that (2) the injury was either a direct result or a reasonably probable consequence of the unseaworthiness"). It was plausible for the court to find causation was lacking.

### B.

CMC challenges the district court's application of the collateral-source rule for determining the amount of cure awarded Manderson. Cure is the shipowner's obligation to pay necessary medical services for seamen injured while in its service. It and its maintenance counterpart have been recognized for centuries. *Hall v. Noble Drilling*, 242 F.3d 582, 586 (5th Cir. 2001) (discussing "venerable history" of maintenance and cure). The cure obligation was first recognized in this country in *Harden v. Gordon*, 11 F. Cas. 480 (C.C.Me. 1823) (No. 6,047) (Story, J.).

In an issue that appears to be of first impression, CMC contends the cure award should not have included the difference between the amount Manderson's medical providers charged and the lesser amount they accepted from his insurer as full payment. *De novo* review applies. *E.g., Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (findings of fact underlying maintenance-and-cure award reviewed for clear error; conclusions of law, *de novo*).

A shipowner's obligation to provide cure to an injured seaman is an implied term of a maritime-employment contract and "does not depend on any determination of fault". *Jauch*, 470 F.3d at 212. "Thus, an owner of a vessel is

almost automatically liable for the cost of medical treatment . . . when a seaman in its employ is injured.*" Brister v. A.W.I., Inc.*, 946 F.2d 350, 360 (5th Cir. 1991).

The pre-trial order granting Manderson's motion *in limine* precluded CMC from "referring to or seeking to introduce evidence of payment by [Manderson's] medical insurers of his medical expenses". Contrary to Manderson's assertion here, this does not preclude CMC's referring to such evidence on appeal. Even assuming, *arguendo*, the order applied to prohibit evidence at trial *and* to calculation of damages, *see Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994) (collateral-source rule can apply as evidentiary rule or as substantive rule of damages, or both), Manderson introduced his insurance records at trial, showing both the amounts charged for his medical care and the lesser amounts his insurer paid, and thus waived his objection. *United States v. Truitt*, 440 F.2d 1070 (5th Cir. 1971) ("It is settled law that one waives his right to object to the admission of evidence if he later introduces evidence of the same or similar import himself.").

The collateral-source rule appears incompatible with maintenance and cure. "The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the *tortfeasor*." *Davis*, 18 F.3d at 1243 (emphasis added). A majority of state courts addressing the matter hold the collateral-source rule prohibits in *tort actions* a reduction of compensatory damages by the difference between the amount billed for medical services and the amount paid. *E.g.*, *Koffman v. Leichtfuss*, 630 N.W.2d 201, 210 (Wis. 2001); *Acuar v. Letourneau*, 531 S.E.2d 316, 322 (Va. 2000). *Contra Hanif v. Housing Authority*, 246 Cal. Rptr. 192, 194-95 (Cal. Ct. App. 1988).

On the other hand, and as discussed above, maintenance and cure is an implied term of contract for maritime employment and is not "predicated on the

fault or negligence of the shipowner". *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994) (citation and internal quotation marks omitted); *Davis*, 18 F.3d at 1246 (shipowner's "duty to pay maintenance and cure . . . is unrelated to any duty of care under tort law"). Accordingly, "[b]ecause of the unique nature of maintenance and cure, normal rules of damages, such as the collateral source rule in tort, are not strictly applied". *Gauthier v. Crosby Marine Serv., Inc.*, 752 F.2d 1085, 1089 (5th Cir. 1985).

Nevertheless, our court has identified an exception to this general rule: "[W]here a seaman has *alone* purchased medical insurance, the shipowner is not entitled to a set-off from the maintenance and cure obligation moneys the seamen receives from his insurer". *Id.* at 1090 (emphasis added). Our court reasoned: "[T]he policy of protecting injured seamen would be hampered if a shipowner, in hopes of reducing his liability, delayed maintenance and cure in order to force seamen to look first to their private insurer". *Id.* Thus, insofar as it can be said the collateral-source rule applies to awards of maintenance and cure, it is in this context.

Manderson was awarded maintenance and cure for the period 24 January 2008-26 January 2009. The court found: between 24 January and 1 March 2008, Manderson was responsible for paying approximately half of his health-insurance premiums; and, for the remaining 11 months of that period, he paid all of them. Having found Manderson purchased his own medical insurance, the court, consistent with our precedent, made no deduction from the cure award for *payments by Manderson's insurer*. But, in doing so, the court found the amount of cure was the greater amount *charged by Manderson's health-care providers*.

CMC contends: the appropriate amount for cure was the lesser amount those *providers accepted as full payment from Manderson's insurer*. We agree.

CMC identifies no caselaw addressing its contention, nor have we found any. On the other hand, our court has repeatedly held an injured seaman may

recover maintenance and cure only for those expenses "actually incurred". *E.g.*, *Davis*, 18 F.3d at 1246; *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002). Accordingly, the relevant amount is that needed to satisfy the seaman's medical charges. This applies whether the charges are incurred by a seaman's insurer on his behalf and then paid at a written-down rate, or incurred and then paid by the seaman himself, including at a non-discounted rate. Thus, in Manderson's case, regardless of what his medical providers charged, those charges were satisfied by the much lower amount paid by his insurer. Consequently, the district court erred by awarding the higher, charged (but *not* totally paid) amount.

Manderson's payment of health-insurance premiums benefitted CMC. Had he not paid them, it is unlikely Manderson would have been able to negotiate payment of his medical charges as low as his health insurer did, and CMC would have been obligated to pay a higher amount. Although this benefit conferred on CMC may, as discussed above, have presented a problem in the tort context (with CMC paying compensatory damages), it is not a problem here, where fault is not an issue and CMC is liable only for maintenance and cure.

In awarding Manderson the amount equal to what was charged for his medical services, rather than the amount accepted as full payment, the district court went beyond the scope of cure. As a result, the award of cure is modified. The district court arrived at its cure award, $169,691.06, after deducting amounts charged for medical services outside the appropriate time period and for services unrelated to Manderson's ulcerative colitis and diabetes. Second Opinion, at 2. Based on these findings, which are not challenged here, but using the amount paid by Manderson's health insurer, rather than the amount charged, we hold Manderson is entitled to recover $71,085.79 for cure.

No. 10-31063

C.

Arbitrary-and-capricious denial of a seaman's request for maintenance and cure can result in the employer's being liable for the seaman's attorney's fees. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995). Based upon its finding CMC "acted in an arbitrary and capricious manner in failing to pay maintenance and cure", the district court awarded Manderson "attorney's fees and costs incurred in the prosecution of his claim for maintenance and cure in the amount of $110,950.00". Second Opinion, at 3.

CMC contests this on several grounds. And, in a related issue, Manderson challenges the denial of his separate motion for costs. We review for abuse of discretion. *Breese v. AWI, Inc.*, 823 F.2d 100, 102-03 (5th Cir. 1987) (arbitrary-and-capricious finding); *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985) (costs award).

1.

CMC contests the finding that its maintenance-and-cure denial was arbitrary and capricious. CMC contends the court erred because: it made no underlying findings in support of that ultimate finding; and the record does not support it.

To prove an employer's conduct was arbitrary and capricious, a seaman must do more than prove the employer's conduct was unreasonable. *Morales*, 829 F.2d at 1358. Rather, it is only when the employer "has exhibited callousness and indifference to the seaman's plight" that it becomes liable for attorney's fees. *Id.* Our court has described this "higher degree of fault" as "egregiously at fault", "recalcitrant", "willful", and "persistent". *Id.*

In its First Opinion, the court did not find that CMC had been arbitrary and capricious; rather, without explanation, the court awarded Manderson "attorney fees incurred in the pursuit of maintenance and cure". 2010 WL

3035491, at *8. In its Second Opinion, the court stated only: "This Court finds [CMC] acted in an arbitrary and capricious manner in failing to pay maintenance and cure".

a.

In district court, CMC presented evidence to support its contention that Manderson was not owed maintenance and cure: he had experienced similar flare-ups of his ulcerative colitis before working for CMC; before requesting maintenance and cure, he filed for short-term and long-term disability, claiming his ulcerative colitis was *not* work-related and, in doing so, sent CMC a copy of the claim, which included a form filled out by Manderson's doctor stating the same; the district court had already found Manderson failed to disclose one condition, Hepatitis C, and, thus, was not entitled to maintenance and cure for it; Manderson failed to reveal his pre-existing history of high glucose levels and diabetes at the time he was hired; when he left the CMC vessel in January 2008 and was hospitalized, he failed to file an injury report with the company; and he voluntarily worked long hours. Although the district court ultimately rejected this contention, and CMC does not here challenge the court's awarding maintenance and cure, the supporting evidence for the contention cuts against the related arbitrary-and-capricious finding.

Furthermore, upon receiving a formal demand for maintenance and cure from Manderson's counsel, CMC promptly referred the matter to its underwriter to investigate the claims, and the underwriter did so. Finally, that only approximately two months passed after Manderson requested maintenance and cure before he filed this action also militates against an arbitrary-and-capricious finding.

Therefore, CMC's conduct cannot be found to be "egregiously at fault", "recalcitrant", "willful", "persistent", *etc*. Accordingly, the requisite bases are

lacking for, and the district court clearly erred in, finding CMC arbitrary and capricious in denying maintenance and cure to Manderson.

### b.

Because attorney's fees can be awarded only for an arbitrary-and-capricious denial, *Morales*, 829 F.2d at 1358, the attorney's-fees award is vacated.   As a result, we need not reach CMC's challenge to the amount awarded.

### 2.

In contesting the denial of his Rule 54(d) motion for costs, Manderson contends:  that Rule creates a presumption in favor of awarding costs to the prevailing party; Manderson is the prevailing party because the court, *inter alia*, granted maintenance-and-cure claims; the court denied his motion for costs as the prevailing party, stating it already awarded him attorney's fees and costs in connection with his maintenance-and-cure claims, but this was error, because the court awarded attorney's fees but not costs; and the court also erred in providing no reason for its denial of costs.

As Manderson points out, there is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Schwarz*, 767 F.2d at 131.  Accordingly, a district court "may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so". *Id.* (citation and internal quotation marks omitted).  The district court denied Manderson's costs request because:  Manderson had "already been awarded attorneys fees and costs, on its successful maintenance and cure claims"; and "although [Manderson] is not precluded from moving for costs, he did not prevail on any of his other claims".  Third Opinion, at 1.

It is unclear whether Manderson has been awarded any costs.  Although the final judgment stated CMC was "liable to [Manderson] for attorney's fees *and costs* incurred in the prosecution of his claim for maintenance and cure"

(emphasis added), Manderson's application in that regard included only attorney's fees.  Any costs awarded in that instance, however, would relate only to Manderson's maintenance-and-cure claims, whereas an award under Rule 54(d) would cover costs incurred on his other claims.

Nevertheless, the court's explanation that Manderson did "not prevail on any of his other claims", combined with the court's willingness to assume in the same order, *arguendo*, that CMC was the prevailing party, provides sufficient justification for its costs denial.  Third Opinion, at 1.  *See In re Corrugated Container Antitrust Litigation*, 756 F.2d 411, 418 (5th Cir. 1985) ("The jury found for the plaintiffs in part and for the defendants in part.  The trial court acted within its discretion" in denying costs to defendants.).  This is even more so, in the light of our vacating or modifying a substantial part of the relief granted by the district court.  Accordingly, there was no abuse of discretion.

## III.

For the foregoing reasons, the judgment is AFFIRMED in part; MODIFIED in part; and VACATED in part; and this matter is REMANDED for entry of judgment consistent with this opinion.