# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 20, 2012

No. 11-30579
Summary Calendar

Lyle W. Cayce
Clerk

WILLIAM MOORE,

Plaintiff-Appellant-Cross-Appellee

v.

OMEGA PROTEIN, INCORPORATED; RACCOON POINT M/V,

Defendants-Appellees-Cross-Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-311

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges:

PER CURIAM:[*]

In this admiralty and maritime law case, Plaintiff-Appellant Cross-Appellee William Moore ("Moore" or the "Plaintiff-Appellant") appeals the district court's denial of his motion for a new trial, which he filed following a jury verdict in favor of Defendant-Appellees Cross-Appellants Omega Protein, Inc. and RACOON POINT M/V (the "Defendants-Appellees"). Because the district court did not abuse its discretion, we AFFIRM.

---

[*] Pursuant to FIFTH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in FIFTH CIR. R. 47.5.4.

No. 11-30579

This case arises from an ankle injury suffered by Plaintiff-Appellant Moore aboard the F/V RACCOON POINT (the "vessel"), a commercial fishing vessel owned and operated by Defendant-Appellee Omega Protein. On August 8, 2008, Moore was injured when his leg became caught in the coil of a rope he was using to secure the vessel to a piling in the Freshwater Bayou Locks, located in Louisiana. Moore filed suit in the Eastern District of Louisiana in February 2010, bringing a claim for negligence under the Jones Act, 46 U.S.C. § 30104, alleging that the accident was caused by the negligence of the vessel's master, Captain Newton, and a claim of unseaworthiness, alleging that the accident was caused by the condition of the vessel. The case was tried to a jury over three days in January 2011, and the jury returned a unanimous verdict in favor of the Defendants-Appellees. The district court entered judgment and dismissed Moore's claims with prejudice.

Plaintiff-Appellant Moore subsequently filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59, arguing that the verdict was not supported by the evidence. The district court denied the motion, finding that the verdict was not against the great weight of the evidence. Moore then filed the instant appeal, appealing only the denial of his motion for a new trial. In response, the Defendants-Appellees filed a conditional cross-appeal, arguing that the district court erred in refusing to include a jury instruction on comparative fault.

Under Rule 59 of the Federal Rules of Civil Procedure, a motion for a new trial may be granted due to an insufficiency of the evidence, although such motion should be denied "unless the verdict is against the great [weight], not merely the preponderance, of the evidence." *Jones v. Wal–Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989); Fed. R. Civ. P. 59(a)(1)(A). We review the district court's decision denying a motion for a new trial for abuse of discretion. *Id.* "The district court abuses its discretion [in denying such motion] . . . only when there

2

No. 11-30579

is an absolute absence of evidence to support the jury's verdict." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991) (citation omitted).  The reviewing court gives somewhat more deference to the district court's ruling where, as here, "the district court has denied the new trial motion . . . and left the jury's determinations undisturbed." *Dawson v. Wal–Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992) (citations omitted).  *See also Foradori v. Harris*, 523 F.3d 477, 504 (5th Cir. 2008) (stating "[w]hen the trial judge has refused to disturb a jury verdict, all the factors that govern our review of his decision favor affirmance." (quotation omitted)); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (describing stringent standard for overturning denial of motion for a new trial due to lack of evidence).

As to the substantive law governing Moore's claims, the Jones Act permits "[a] seaman injured in the course of [his] employment" to recover from his employer for negligence.  46 U.S.C. § 30104; *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 298 (5th Cir. 2008); *Park v. Stocksill Boat Rentals, Inc.*, 492 F.3d 600, 602–03 (5th Cir. 2007).  Under the Act, an employer is liable if its negligent breach of duty caused the seaman's injury.  *Cain*, 519 F.3d at 298.  The relevant standard of care is "ordinary prudence under the circumstances." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997).  Although the burden of proving negligence is relatively "light" under the Jones Act, an injury "does not presuppose negligence."  *Marvin v. Cent. Gulf Lines, Inc.*, 554 F.2d 1295, 1299 (5th Cir. 1977).

Unlike a Jones Act claim, a claim for unseaworthiness is predicated "without regard to fault or the use of due care," and "a shipowner has an absolute nondelegable duty to provide a seaworthy vessel."  *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991) (quotation omitted).  To prove a claim of unseaworthiness, an "'injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and

No. 11-30579

safe for the purposes for which it is to be used.'" *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)).  However, a ship "owner is not obligated to furnish an accident-free ship." *Stocksill*, 492 F.3d at 604 (quotation omitted).  The complaining seaman must also establish a causal connection between the injury and the claimed unseaworthy condition. *Jackson*, 245 F. 3d at 527.

Here, there is evidence in the record supporting the jury's finding that accident was not caused by the negligence of a member of the crew, such as Captain Newton, and that the equipment and conditions on the vessel were reasonably safe for their intended purpose.  For example, Captain Newton testified that he piloted the vessel into the locks slowly on the day of the accident and that Moore failed to follow normal procedure by attempting to tie the mooring rope to the piling while the vessel was still moving.  Captain Newton also stated that Moore told him soon after the accident that his injury was a result of his own "dumb, stupid mistake."  The jury also reviewed another statement made by Plaintiff Moore—also made soon after the accident—in which Moore stated the accident was not due to unsafe equipment or working conditions on the vessel.  In addition, the jury heard testimony from Albert Carter, a mate on the vessel, who testified about the storage and condition of the rope used by Moore; Carter stated that the rope was appropriately stored on a rack on the deck and that it was in good repair.  Similarly, Captain Newton testified the rope was stored in a rack and that the rope had no unsafe kinks or wear that could have caught Moore's leg.  Finally, other evidence adduced at trial indicated that Moore was sufficiently trained and experienced for his job and that attaching the line to the piling was normally a one-person task.[1]

---

[1] Indeed, in his briefing, Plaintiff-Appellant Moore seems to concede that there is evidence in the record supporting the jury's verdict.  Rather than dispute this point, Moore requests that the Court disregard this testimony because it is not credible, or was contradicted

No. 11-30579

Based on this testimony, we cannot conclude that there is an "absolute absence" of evidence supporting the jury's verdict. Therefore, given the highly deferential standard of review, we affirm the district court's judgment. We do not reach the issues raised in the conditional cross-appeal and we dismiss it as moot.

We AFFIRM.

---

by other statements made by these same witnesses. This argument seems to misunderstand the nature of our review—we are now bound to accept all evidence supporting the verdict as true and we are merely reviewing the record to decide whether there is an "absolute absence" of evidence, and not whether the jury erred in crediting the testimony of certain witnesses over others. *See, e.g., Garriott v. NCsoft Corp.*, 661 F.3d 243, 247 (5th Cir. 2011) (stating that court is "bound to accept all evidence in favor of the verdict as true" and that reversal is not appropriate unless there is "an absolute absence of evidence to support the jury's verdict." (internal quotations and citations omitted)).