**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 30, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 04-20589
_____

HONEYWELL INTERNATIONAL INC, formerly known as Allied
Signal Inc,

Plaintiff-Appellant,

versus

PHILLIPS PETROLEUM CO; ET AL,

Defendants

CONOCO PHILLIPS CO,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before REAVLEY, JONES, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Honeywell International, Inc. ("Honeywell") appeals the district court's order granting

summary judgment in its suit against Phillips Petroleum Company ("Phillips"). The issue on appeal

is whether the court erred in holding that Phillips had no contractual duty to indemnify Honeywell for costs and attorney's fees Honeywell incurred defending a suit by Lone Star Industries ("Lone Star").

I

In 1968, The Signal Companies, Inc. ("Signal") sold a former oil refinery site along the Houston ship channel to Lone Star (the "Lone Star Site"). Approximately a year later, Signal reformed itself as a holding company and began running its three operations))real estate development, chemicals, and natural resources))through subsidiaries. Signal transferred its natural resources business to Signal Oil & Gas ("Signal Oil"), a previously inactive subsidiary. The transfer agreement (the "Master Agreement") contained a provision requiring Signal Oil to assume certain liabilities, the scope of which is the basis for this action.

In 1992, Lone Star sued Signal, now named Honeywell,[1] under the Comprehensive Environmental Response Compensation Act ("CERCLA") and the Resource Recovery and Conservation Act ("RCRA") for pollution damages on the Lone Star Site. 42 U.S.C. §§ 9613(b), 6972(a)(1)(B). In 1993, Honeywell filed a third-party complaint against Signal Oil, now Phillips, for indemnity. Honeywell successfully defended against Lone Star's claims, with the district court entering judgment in favor of Honeywell in 1998. The judgment against Lone Star did not address Honeywell's claims against Phillips, which had yet to be adjudicated. On Honeywell's motion, the court entered an order pursuant to FED. R. CIV. P. 21 severing Honeywell's third-party action against Phillips. The court entered an amended final judgment in the original action reflecting the severance.

---

[1] Signal was actually named Allied Signal, Inc. ("Allied") when Lone Star filed its action. To avoid confusion, however, we refer to Allied as Honeywell.

Honeywell's 1993 complaint against Phillips, filed before Honeywell's legal liability to Lone Star had been adjudicated, asked the court to hold Phillips liable both for any amount it might be adjudged liable to Lone Star and for costs and attorney's fees associated with the Lone Star suit. Honeywell's indemnity claims against Phillips remained in the complaint against Phillips after that action was severed from the Lone Star action in 1998. But, in light of the court's judgment against Lone Star and Lone Star's failure to appeal, the parties focused exclusively on Honeywell's request for attorney's fees and costs in their 2003 and 2004 cross-motions for summary judgment. Phillips' motion argued that it was obligated to indemnify Honeywell only for liabilities related to the assets that Signal transferred to Signal Oil. Because Signal sold the Lone Star Site two years before transferring its natural resource operation to Signal Oil, Phillips argued, Signal Oil did not inherit liability associated with the site.

The district court agreed. It held that neither the Master Agreement nor a supplement executed in 1974 as part of Signal's sale of Signal Oil (the "Supplemental Agreement") required Phillips to indemnify Honeywell for liability relating to a property Signal sold in 1968. Honeywell appeals, arguing not only that the district court erred in granting summary judgment but also that the court lacked subject matter jurisdiction over Honeywell's severed claim.

II

Before reaching the merits of the district court's decision, we address Honeywell's contention, raised for the first time on appeal, that the district court did not have subject matter jurisdiction over its severed action against Phillips. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997) (stating that every appellate court has an obligation to satisfy itself of its own jurisdiction and that of the district court); *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999)

("A lack of subject matter jurisdiction may be raised at any time, which means we can examine the district court's jurisdiction for the first time on appeal.") (internal citation omitted).

In assessing whether the district court had subject matter jurisdiction, we generally look to the time at which the action commenced. *See Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir. 1994) ("Subject matter jurisdiction is determined at the time the complaint is filed."). However, a severed action must have an independent jurisdictional basis. *See United States v. O'Neal*, 709 F.2d 361, 375 (5th Cir. 1983) (holding that severed counterclaims "became independent actions requiring an independent jurisdictional basis."); *see also* 28 U.S.C. 1367 (providing that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims *in the action* within such original jurisdiction that they form part of the same case or controversy . . . .") (emphasis added). Accordingly, we look to the point at which that action was severed from Lone Star's action against Honeywell to determine whether the district court had subject matter jurisdiction over Honeywell's claims against Phillips.

Phillips argues that Honeywell's third-party complaint contained both federal and state law causes of action. Honeywell's 1993 complaint against Phillips alleged, in relevant part:

> CAUSE OF ACTION INVOLVING LONE STAR
>
> 23.  If [Honeywell] is liable to Lone Star . . . then Phillips is liable to [Honeywell by way of assumption, indemnity and/or contribution.
>
> . . . .
>
> PRAYER FOR RELIEF
>
> 28. Defendant and third-party plaintiff [Honeywell] respectfully prays that the Court enter judgment against Phillips and:
>
> (a) hold Phillips liable for any amounts which [Honeywell] may be

judged liable to Lone Star, including award of contribution from Phillips pursuant to 42 U.S.C. § 9613(f) if [Honeywell] is found liable to Lone Star for response costs;

. . . .

(d) enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that Phillips is liable to [Honeywell] for all current and future liabilities . . . including all current and future response costs pursuant to 42 U.S.C. § 9613(f) if [Honeywell] is found liable to Lone Star for future response costs.

Phillips contends that paragraphs 23, 28(a), and 28(d) assert federal causes of action, namely claims for indemnification pursuant to 42 U.S.C. 9613(f). Thus, Phillips argues, the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Honeywell responds that, notwithstanding its references to 42 U.S.C. § 9613(f), the complaint does not establish subject matter jurisdiction because it either did not state a viable federal question at the time it was filed or no longer stated a viable federal claim after the Lone Star judgment became final. *See Raymon v. Alvord Ind. Sch. Dist.*, 639 F.2d 257 (1981) ("A complaint that alleges the existence of a frivolous or insubstantial federal question is not sufficient to establish jurisdiction in federal court."); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980) ("the assertion that the claim involves such a question must be more than incantation. While jurisdiction does not depend on the contention having ultimate merit, its mere recital cannot confer jurisdiction if the contention is frivolous or patently without merit.").

Honeywell's request that the district court "hold Phillips liable for any amounts which [Honeywell] may be judged liable to Lone Star, including award of contribution from Phillips pursuant to 42 U.S.C. § 9613(f) if [Honeywell] is found liable to Lone Star for response costs" states a federal cause of action sufficient to invoke federal jurisdiction. While the sufficiency of Honeywell's

-5-

complaint to support this cause of action, and whether Phillips could be subjected to liability under § 9613(f)(1), are certainly open to question,[2] "legal insufficiency of a federal claim generally does not eliminate the subject matter jurisdiction of a federal court . . . ." *Growth Horizons, Inc. v. Del. County, Pa.*, 983 F.2d 1277, 1280 (3d Cir. 1993). Having reviewed Honeywell's complaint, we find that its CERCLA contribution claim against Phillips, when filed, was not so insubstantial, meritless or so foreclosed by precedent as to render it insubstantial for purposes of subject matter jurisdiction.

Honeywell next argues that even if its complaint against Phillips stated a federal cause of action when filed, it no longer stated a viable federal claim after Honeywell was adjudged not liable to Lone Star. Honeywell notes that its complaint asked for "contribution from Phillips pursuant to 42 U.S.C. § 9613(f) *if [Honeywell] is found liable to Lone Star for response costs . . . .*" (emphasis added). Honeywell claims that at the time its action against Phillips was severed, Lone Star's time to appeal the district court's judgment against it had already passed and there was, therefore, a final,

---

[2] Section 9613(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). To be subject to a claim under § 9613(f), then, the defendant must be "liable or potentially liable under section 9607(a)." *Id.* Persons subject to liability under § 9607(a) include, among others, "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). The term "person" includes corporations. 42 U.S.C. § 9601(21).

Signal Oil did not own the Lone Star site at the time the alleged pollution occurred. But circuit courts that have addressed the question have concluded that a successor corporation is a person for purposes of § 9607(a). *See, e.g., New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682, 684 (2d Cir. 2003) (addressing whether "a corporation that purchased the assets of a company liable for environmental response costs under CERCLA should be held liable for those same costs as a successor corporation"). Thus, if Phillips could be construed as a successor to Signal, it could potentially be subjected to liability under § 9613(f)(1). Whatever the ultimate merit of such an argument, we are not convinced that Phillips' potential liability as a successor corporation is so foreclosed by precedent as to make it frivolous.

unappealable judgment. Thus, Honeywell reasons, the CERCLA contribution claim dissolved by its own terms when Honeywell prevailed in the Lone Star action.

We reject this argument. Even assuming that a final, unappealable judgment in favor of Honeywell against Lone Star would have defeated subject matter jurisdiction, such a judgment did not exist at the time the district court severed Honeywell's action against Phillips. Honeywell's argument is premised on the assumption that the time for Lone Star to appeal began to run when the court first granted judgment against Lone Star. This is incorrect. The court's judgment against Lone Star did not become appealable until the court severed the unresolved indemnity claims. *See* FED R. CIV. P. 54(a), (b); *Allied Elevator, Inc. v. E. Tex. State Bank of Buna*, 965 F.2d 34, 36 (5th Cir. 1992) (noting that a judgment was not appealable because it failed to dispose of all claims, but became appealable when the district court severed those claims on which judgment was rendered from the remaining claim). The time for Lone Star to appeal only began to run when the district court severed Honeywell's action against Phillips from Lone Star's action against Honeywell. At the time of severance, then, Lone Star's judgment was still subject to appeal. Accordingly, at the time the district court severed Honeywell's action against Phillips, the federal question it presented was not so insubstantial as to defeat subject matter jurisdiction.[3] Because the district court had federal question jurisdiction when Honeywell's severed action commenced, it also had supplemental jurisdiction over Honeywell's contractual indemnity claims, even if Honeywell's federal claim later

_____

[3] The Supreme Court's holding in *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 125 S.Ct. 577 (2004) is not inconsistent with our analysis. In *Aviall*, the Court held that a party may file an action under § 9613(f)(1) "only 'during or following any civil action' under CERCLA § 106 or § 107(a)." *Id.* at 580 (quoting 42 U.S.C. § 9613(f)(1)). Honeywell, then subject to a still-appealable judgment in its favor on Lone Star's CERCLA claim against it, met this requirement at the time the district court severed its action against Phillips.

-7-

ceased to present a viable theory of recovery. *See Baker v. Farmers Elec. Coop., Inc.*, 34 F.3d 274, 283 (5th Cir. 1984) (holding that jurisdiction under § 1367 "may continue even after the federal claims upon which jurisdiction is based have been dismissed or rendered moot") (citing *Hefner v. Alexander*, 779 F.2d 277, 281 (5th Cir. 1985).

III

We review the district court's order granting summary judgment *de novo*. *Baton Rouge Oil & Chem. Workers v. ExxonMobil Corp.*, 289 F.3d 373, 376 (5th Cir. 2002). We affirm the judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We review the district court's interpretation of the contract between Signal and Signal Oil *de novo*. *See T.L. James & Co. v. Traylor Bros.*, 294 F.3d 743, 746 (5th Cir. 2002).

Honeywell relies on two documents to demonstrate that Phillips assumed all liability associated with the Lone Star Site. The Master Agreement, by which Signal transferred its natural resources business to Signal Oil, stated, in relevant part:

> 1. Subject to the terms of this Agreement, [Signal] does hereby grant, convey, assign, transfer and set over onto Grantee, its successors and assigns forever, all of Grantor's natural resources business, including without limitation insofar as they pertain to said natural resources business, all cash, contracts, choses in action, securities, receivables, properties real, personal and mixed, tangible or intangible and all other assets of whatever kind or nature and wherever situated owned by [Signal] on the effective date of this Agreement.
>  . . . .
>
> 3. The assets transferred under this Agreement are subject to all debts, obligations and liabilities of Grantor of every kind and description related to and/or arising out of or in connection with such assets, and Grantee does hereby undertake, assume and agree to pay, perform and discharge as they mature, accrue and/or become payable,

-8-

all such debts, obligations and liabilities.

The second document is the 1974 Supplemental Agreement. It stated, in relevant part, that "as of January 1, 1970, [Signal Oil] . . . assumed all debts (long and short-term), obligations (contractual and otherwise) and liabilities (known and unknown) related to said natural resources business and assets." It further provided that Signal Oil "hereby confirms to and agrees with Signal that it has fully and unconditionally assumed and agreed to perform and pay . . . all liabilities (known and unknown, accrued, absolute, contingent, or otherwise) of any nature whatsoever, assigned to and assumed . . . by [Signal Oil] pursuant to the said Matter Agreement."

After reviewing these documents, the district court concluded that "[u]nder their contract, Signal conveyed to Signal Oil the assets of its oil business that it owned on January 1, 1970. Signal Oil assumed the debts, obligations, and liabilities connected to those assets." The Lone Star facility, sold in 1968, was not among the assets transferred and thus, the district court reasoned, "no longer part of Signal's oil business." The court likewise concluded that the Supplemental Agreement did not require Phillips to indemnify Honeywell.

We agree that the Master and Supplemental Agreements do not obligate Phillips to indemnify Honeywell for liability associated with the Lone Star Site. The Master Agreement states that Signal grants its "natural reso urces business" to Signal Oil. Paragraph one identifies that business as "including without limitation insofar as they pertain to said natural resources business, all cash, contracts, choses in action, securities, receivables, properties real, personal and mixed, tangible or intangible and all other assets of whatever kind or nature and wherever situated *owned by [Signal] on the effective date of this Agreement*." (emphasis added). Paragraph t hree, in turn, defines the liabilities assumed by Signal Oil. It provides that "[t]he assets transferred under this Agreement are

-9-

subject to all [liabilities] related to and/or arising out of or in connection with such assets, and Grantee does hereby undertake, assume and agree to pay, perform and discharge as they mature, accrue and/or become payable, all such . . . liabilities." Crucially, the Master Agreement defines Signal Oil's liabilities in terms of the assets transferred under the agreement. It does not define Signal Oil's liability in terms of all liabilities relating to assets transferred *or previously owned by Signal*.

Notwithstanding the language of the Master Agreement, Honeywell argues that it does not limit Phillips' liability to liability arising from the transferred assets. First, it argues that because Signal Oil was a subsidiary of Signal at the time the parties entered into the Master Agreement, there is no reason to believe that Signal would have chosen to retain any liability. We need not inquire whether Signal had reason to retain some liability associated with its past actions. It is enough to say that, in interpreting an unambiguous contract, we ascertain the parties' intent from the words of the agreement and not from speculation about the parties' subjective intentions. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818 (Del. 1992) (stating that it is an elementary canon of contract interpretation that the intent of the parties must be ascertained from the language of the contract).[4]

Honeywell next argues that we should not read the Master Agreement's use of the word "assets" in defining Signal Oil's liability as limiting the scope of liability assumed. Essentially, Honeywell argues that when the parties wrote "related to or arising out of or in connection with [the assets transferred under this Agreement]," they meant to write "related to or arising out of or in connection with assets related to Signal's natural resource business, whether owned now or in the past." More broadly, Honeywell argues that the district court misconstrued the Master Agreement

---

[4] The parties agree that Delaware law governs interpretation of the Master and Supplemental Agreements.

by focusing on the references to assets rather than on Signal's intent to transfer the whole of its natural resources business. There is no basis for Honeywell's proffered construction. The parties defined the scope of Signal Oil's liability by reference to the assets received. As the district court noted, Signal could have explicitly required Signal Oil to assume all liabilities associated with its natural resource business whether related to assets presently possessed or long since departed. It did not, and we will not rewrite the parties' agreement under the guise of interpreting it. *See Ed Fine Oldsmobile, Inc. v. Diamond State Tel. Co.*, 494 A.2d 636, 638 (Del. 1985) ("any different course would involve us in rewriting the plain language of an otherwise valid contractual provision. That is not the function of a court.").

The Supplemental Agreement does not alter our understanding of the scope of Phillips' liability. In that document, Signal Oil agreed that it had "received and accepted and held or now holds all of Signal's natural resource business *referred to in the Master Agreement*," again identifying that business by reference to the assets transferred. (emphasis added). Paragraph two of the agreement again confirms that Signal Oil has assumed the liabilities "assigned to and assumed (or to be assumed) by [Signal Oil] pursuant to the said Master Agreement . . . ." The document goes on to specifically identify certain obligations for which Signal Oil has assumed responsibility. We find nothing in the Supplemental Agreement to suggest that the parties altered or enlarged the scope of the liability Signal Oil assumed under the original Master Agreement.

We also find unpersuasive Honeywell's reliance on *Purolator Prods. Corp. v. Allied-Signal, Inc.*, 772 F. Supp. 124 (W.D.N.Y. 1991). In *Purolator*, a corporation had transferred its "Motor Components Division," to a subsidiary. *Id*. at 127. Among the issues presented was whether the subsidiary was required to indemnify the parent company for liability relating to a business which had

ceased to operate prior to the transfer. The court held that the subsidiary was obligated to indemnify the parent for liability associated with the discontinued operation. *Id*. at 133. The transfer agreement at issue in *Purolator* defined the subsidiary's liability as "relating to or arising out of the Assets [transferred]," but it defined "Assets" to include "[a]ll of the assets, properties, businesses, good will, rights, privileges and interests of whatever nature" associated with the parent's Motor Components Division. *Id*. at 132. Here, by contrast, the Master Agreement did not use "assets" as a defined term, but rather provided a list of assets comprising the business to be transferred, concluding with "all other assets of whatever kind or nature and wherever situated *owned by [Signal] on the effective date of this Agreement*." (emphasis added). There is simply nothing in the Master Agreement to suggest that the parties intended Signal Oil to assume liability other than that associated with the assets transferred.

## IV

For the forgoing reasons, we AFFIRM the judgment of the district court.