# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 16-20109

March 22, 2017

Lyle W. Cayce
Clerk

SETTLEMENT FUNDING, L.L.C.; PEACHTREE SETTLEMENT
FUNDING, L.L.C.; EVELYN E. FRANKLIN,

Plaintiffs - Appellants Cross-Appellees

v.

RAPID SETTLEMENTS, LIMITED, RAPID MANAGEMENT
CORPORATION; STEWART A. FELDMAN,

Defendants - Appellees Cross-Appellants

and

RSL FUNDING, L.L.C.,

Defendant-Third Party Plaintiff - Appellee Cross-Appellant

v.

J.G. WENTWORTH S.S.C., L.P.; JGWPT HOLDINGS, L.L.C.; JLL
PARTNERS, INCORPORATED; DAVID MILLER; JG WENTWORTH
ORIGINATIONS, L.L.C.,

Third Party Defendants - Cross-Appellees

Appeals from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and PRADO, Circuit Judges.

No. 16-20109

E. GRADY JOLLY, Circuit Judge:

This dispute arises between two companies in the secondary market for structured settlement payments: Peachtree and Rapid.[1] These two companies are in the business of identifying individuals who are the beneficiaries of structured settlements, which provide a stream of payments, much like an annuity, usually over an extended period of years; once an annuitant is identified, the companies offer to purchase the stream of payments in return for a lump sum. Here, Peachtree sued Rapid for tortious interference with its contracts, alleging that Rapid "poached" clients whose annuities it had already contracted to purchase.

The district court, relying on a decision by a Texas appellate court, dismissed Peachtree's tortious interference claims as a matter of law. Peachtree appeals. Rapid cross-appeals, arguing for the first time after nearly four years of federal litigation that there is no federal subject matter jurisdiction because (1) the removal notice did not adequately plead the citizenship of the LLC entities that are parties to this case, and (2) the pleadings did not, on their face, raise a federal question.

We are not happy that jurisdiction is a late show-up in this case. Nevertheless, we hold that the plaintiffs have failed to meet their burden of establishing either federal question or federal diversity jurisdiction. In short, the federal courts have no subject matter jurisdiction over this case. We vacate the judgment and remand with directions to remand the case to the state court.

---

[1] "Peachtree" collectively refers to the plaintiffs/appellants/cross-appellees: Settlement Funding, LLC; a related entity, Peachtree Settlement Funding, LLC; and an individual annuitant, Evelyn Franklin. "Rapid" collectively refers to the defendants/appellees/cross-appellants: Rapid Settlements, Limited; a related entity, Rapid Management Corporation; Stewart A. Feldman, an individual who owns and manages these companies; and another related entity, RSL Funding, LLC.

No. 16-20109

## I.

### A.

In the world of purchasing payment rights to structured settlement agreements, it appears that not all the players wear white gloves.  This characteristic of the business has been noticed by the State of Texas and several other states.  Thus, to protect recipients of structured settlements from unfair or abusive offers, many states have enacted Structured Settlement Protection Acts that require court approval of any contract to sell the payment rights to a structured settlement.  *See, e.g.,* Tex. Civ. Prac. & Rem. Code § 141.001 *et seq.*[2]

The crux of this dispute is that Peachtree claims that Rapid has been interfering with the business relations between it and its clients.  In distilled terms, Peachtree alleges that, through expensive search and advertising efforts, it finds "clients"—recipients of structured settlements—makes them an offer for their payment stream, and then helps them through the hurdle of court approval of the transfer agreement.  The defendant, Rapid, then peruses the court filings, directly contacts Peachtree's clients while the approval request is still pending in court, and makes the client a more generous offer, causing the client to either renege on his agreement with Peachtree or demand that Peachtree increase its offer.

### B.

The present litigation began in 2006, when Peachtree sued Rapid in Texas state court alleging, among other things, tortious interference with a contract between it and Franklin, a New York resident.  Rapid, it alleged,

---

[2] This court has previously described the structured settlement payment industry in greater detail.  *See Symetra Life Ins. Co. v. Rapid Settlements, Ltd.,* 775 F.3d 242, 245–46 (5th Cir. 2014).

No. 16-20109

found Franklin through the court filings and tried to persuade her to breach her contract with Peachtree by making her a better offer.[3] The litigation was consolidated with Peachtree's similar claim against Rapid involving a Texas resident, Michale Parenti.[4]

In 2012, some six years into the litigation before the Texas state court, Rapid asserted new claims against a group of third-party defendants called the "Wentworth Parties."[5] Rapid[6] alleged, among other things, a state law civil conspiracy claim. The newly-impleaded Wentworth Parties promptly removed the entire case to federal court. They stated that the basis for removal was both diversity jurisdiction and federal question jurisdiction.[7] The Wentworth Parties were later dismissed, and are no longer parties to the case. Peachtree and Rapid continued to litigate their tortious interference suit in federal court.

By September 2015, the only disputed colorable claims were Peachtree's tortious interference claims against Rapid with respect to Franklin and

---

[3] Although Franklin was a New York resident, Peachtree sued Rapid, which is based in Texas, in Texas court.

[4] This litigation has involved numerous amended, consolidated, and severed claims and suits relating to similar allegations of tortious conduct by Rapid.

[5] "Wentworth Parties" collectively refers to J.G. Wentworth SSC LP; JGWPT Holdings, LLC; JLL Partners, Inc.; David Miller; and JG Wentworth Originations, LLC. Some of the Wentworth Parties appear to hold ownership stakes in the same entities that comprise Peachtree—Settlement Funding, LLC, and Peachtree Settlement Funding, LLC. In other words, at the risk of some oversimplification, the Wentworth Parties are members of Peachtree. However, Rapid's claims against the Wentworth parties were distinct from its litigation with Peachtree.

[6] The third-party claims were brought by RSL Funding, LLC.

[7] The Wentworth Parties asserted that Rapid's state law civil conspiracy claim, which alleged that the Wentworth Parties entered into improper agreements with other companies in the structured-settlement-purchasing business to refrain from interfering with their contracts, implicated federal antitrust law and thus raised a federal question.

4

No. 16-20109

Parenti. On summary judgment, the district court[8] dismissed Peachtree's interference claims as a matter of law. The court relied on a recent decision from a Texas appellate court, *Washington Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), which held Texas law did not recognize a tortious interference claim based on a contract that had not yet been approved pursuant to the Texas Structured Settlement Protection Act; Peachtree's contracts with Franklin and Parenti had not been approved at the time Rapid allegedly made its raid. Peachtree voluntarily dismissed any remaining claims it had pending, and the district court entered final judgment. Peachtree timely appeals the judgment.[9]

## II.

As earlier indicated, for the first time on appeal, after nearly four years of litigation in the federal district court, Rapid now makes the argument that there is no federal jurisdiction. Specifically, it argues that there was neither federal question jurisdiction nor diversity of citizenship at the time the Wentworth Parties removed the case to federal court.[10]

"A lack of subject matter jurisdiction may be raised at any time and may be examined for the first time on appeal." *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 935 (5th Cir. 2012). The burden of

---

[8] The party's claims were referred to a magistrate judge for all proceedings.

[9] Because we are not satisfied that there is subject matter jurisdiction, we do not reach the merits of Peachtree's appeal.

[10] Neither party has raised whether the Wentworth Parties, as third-party defendants, were entitled to remove the case at all pursuant to 28 U.S.C. § 1441, *cf., e.g., First Nat. Bank of Pulaski v. Curry*, 301 F.3d 456, 461–63 (6th Cir. 2002) ("[T]hird-party defendants do not have a statutory right of removal pursuant to § 1441(a)."), or whether they were entitled to remove the case six years after the commencement of the state court action, *see* 28 U.S.C. § 1446(c)(1) ("A case may not be removed . . . on the basis of jurisdiction conferred by section 1332 [diversity jurisdiction] more than 1 year after commencement of the action.").

No. 16-20109

establishing subject matter jurisdiction rests upon the party asserting jurisdiction—in this case, Peachtree. *Id.*

### III.

Peachtree urges us to keep the case in federal court. It first argues that there is federal question jurisdiction because the third-party complaint that Rapid filed against the Wentworth Parties raised a federal question at the time of removal. Specifically, Peachtree contends that Rapid's state law civil conspiracy claim, which alleged that the Wentworth Parties conspired to restrain trade, also implicated federal antitrust law. We cannot agree and hold that the state law conspiracy claim did not raise a federal question.

"Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011); *see also* 28 U.S.C. § 1331. A federal question, however, may arise from a state law claim where "(1) a federal right is an essential element of the state claim, (2) interpretation of the federal right is necessary to resolve the case, and (3) the question of federal law is substantial." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001) (footnote omitted). Still, "there is no federal question jurisdiction if the plaintiff properly pleads only a state law cause of action." *Elam*, 635 F.3d at 803 (citations, quotations, and alterations omitted). Further, "[a] plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist." *Id.*

Rapid's third-party state court complaint for civil conspiracy against the Wentworth Parties alleged that the Wentworth Parties conspired to artificially depress offer prices in the secondary market for structured settlement payment rights. They did so, Rapid alleged, by making improper agreements with other companies to refrain from soliciting other members' deals and to

refrain from making bids to customers who have already signed with another company.

The elements of a civil conspiracy in Texas include "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Rapid's complaint does not specifically state what "unlawful, overt act" with which it is charging the Wentworth Parties. It appears plausible, based on the allegations, that the complaint is accusing them of violating either federal antitrust laws, *see* 15 U.S.C. § 1 *et seq.*, or Texas antitrust laws, *see* Tex. Bus. & Com. Code § 15.01 *et seq.*, or both.

Peachtree argues that the complaint asserts a claim for violation of federal antitrust laws, and thus raises a federal question, because it alleges an "industry-wide agreement." Further, it notes, Rapid alleges a "nationwide scheme" to thwart competition on a "nationwide basis" by companies that control "upwards of 65% of the U.S. market."

But Rapid's allegations are compatible with a claim for violations of only Texas antitrust law. As this court has acknowledged, even where a transaction primarily affects interstate commerce, the Texas antitrust statutes may apply if only a component of the transaction implicates intrastate commerce. *See Pounds Photographic Labs, Inc. v. Noritsu Am. Corp.*, 818 F.2d 1219, 1224 (5th Cir. 1987); *see also Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682–83 (Tex. 2006) ("The mere involvement of interstate commerce does not permit a defendant to escape suit [under Texas antitrust laws]. . . . [T]he Act's purpose of redressing injury in Texas is not to be defeated merely because the injurious conduct also occurred in other states."). Further, if Rapid had intended to assert a claim based on an underlying violation of federal antitrust law, it ought to have filed the claim in federal court, as federal courts have exclusive

jurisdiction over federal antitrust claims. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379–80 (1985).

Accordingly, it is, at best, ambiguous whether the civil conspiracy complaint is based on a violation of federal or state antitrust law. Because "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand," *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002), we hold that the complaint, on its face, does not implicate federal antitrust law and therefore does not raise a federal question.[11] There is no federal question jurisdiction in this case.

## IV.

"[C]omplete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (citations and quotations omitted).

The Wentworth Parties' removal notice[12] failed to allege complete diversity because it did not adequately allege the citizenship of every party; that is, it failed to allege the citizenship of each member of the many LLC- and

---

[11] In its Supplemental Jurisdictional Brief, Peachtree argues that in a joint case management plan Rapid admitted that it was pursuing a claim for federal antitrust violations. It stated that RSL Funding "seeks damages for alleged violations of federal antitrust law." Whether a federal question arises, however, is determined from the face of the plaintiff's complaint, and no more. *See Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir. 2000) ("If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking."); *accord, e.g.*, *R.I. Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009) ("[T]he plaintiff's well-pleaded complaint must exhibit, *within its four corners*, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed.") (emphasis added). Regardless of its intentions, Rapid never amended its third-party complaint to reflect that it sought damages for violations of federal antitrust law. For the reasons stated, the third-party complaint does not, on its face, raise a federal question.

[12] Recall that the Wentworth Parties were subsequently dismissed by settlement and are no longer parties to this litigation.

partnership-litigants.  A party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership involved in a litigation.  *See Am. Motorists Ins. Co. v. Am. Emp. Ins. Co.*, 600 F.2d 15, 16 (5th Cir. 1979) ("[T]he plaintiff's complaint must specifically allege each party's citizenship."); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[T]he citizenship of a LLC is determined by the citizenship of all of its members."); *see also Howery*, 243 F.3d at 919 ("[T]he party asserting federal jurisdiction must distinctly and affirmatively allege the citizenship of the parties.") (citations, quotations, and alterations omitted).  In short, federal diversity jurisdiction was *not* established by the allegations of the Wentworth Parties' notice of removal.

Peachtree nonetheless argues that there is diversity jurisdiction.  In support of its argument that the parties are in fact diverse, Peachtree filed a motion for judicial notice of facts asserted in a sworn declaration by Keith Mayer (the "Mayer Affidavit"), an officer in the corporation that owns Peachtree, as well as documents from public records and court filings purportedly evidencing the citizenship of parties involved in this litigation.

Although Peachtree thoroughly briefs its request that we take "judicial notice" of its filings, we need not decide the issue.  Even assuming that we may consider the filings, they do not establish complete diversity at the time of removal.  After briefing in this matter concluded, Rapid brought to this court's attention filings with the Securities and Exchange Commission that cast doubt on the accuracy of the Mayer Affidavit.  In response, Peachtree admitted that the Mayer Affidavit is erroneous and that Peachtree does not, in fact, know the citizenship of all of its members at the time of removal.  It admits that, despite diligent research, it is not able to determine the citizenship of all of the

members of Settlement Funding, LLC, and Peachtree Settlement Funding, LLC, as it existed at the time that this case was removed from state court.[13]

Accordingly, Peachtree has failed to meet its burden to establish complete diversity of citizenship of all the parties at the time of removal. Indeed, by its own admission, it has renounced the argument that the parties were completely diverse at the time of removal.[14]

To the underlying point of our analysis: Peachtree, by its own admission, has not met its burden to prove that there is complete diversity jurisdiction, and we therefore cannot say that we have jurisdiction over this case.

## V.

We sum up: "Federal courts are courts of limited jurisdiction." *Howery*, 243 F.3d at 916. "We must presume that a suit lies outside this limited

---

[13] Peachtree admitted that it does not know the citizenship of every member of two entities, JLL Fund V AIF I, L.P. ("AIF I") and JLL Fund V AIF II, L.P. ("AIF II"), which it in turn admitted are members of an entity called JLL JGW Distribution, LLC, which is, according to Mayer, an indirect member of both Settlement Funding, LLC, and Peachtree Settlement Funding, LLC. Peachtree also failed to describe the limited partner(s) of an entity called JLL Associates V, LP, which is also, according to Mayer, an indirect member of both Settlement Funding, LLC, and Peachtree Settlement Funding, LLC.

[14] Peachtree contends that although complete diversity was not established at the time of removal, the parties were indisputably diverse at the time of judgment as a result of corporate changes in their respective citizenship. Continuing, Peachtree further argues that diversity jurisdiction may be established based on the state of facts that existed at either the time of removal, or, as in this case, at the time of judgment; it cites *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996), for the proposition that courts may look to diversity as it existed at the time of judgment if a party (as here, the Wentworth Parties) is dismissed by settlement during the course of the litigation. This argument is void of merit. The Supreme Court in *Grupo* expounded: "all challenges to subject-matter jurisdiction [are] premised upon diversity of citizenship against the state of facts that existed at the time of [removal]—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004). It noted that *Caterpillar* reflected a single exception to the virtually inviolable rule because "the jurisdictional defect it addressed had been cured by the dismissal of the party that had destroyed diversity." *Id.* Peachtree cannot argue that this case comes within this exception because it admits that it cannot show that the remaining parties were completely diverse at the time of removal.

No. 16-20109

jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* If the record does not contain sufficient evidence to show that subject matter jurisdiction exists, "a federal court does not have jurisdiction over the case." *Id.* Courts adhere to these rules "regardless of the costs it imposes." *Grupo Dataflux*, 541 U.S. at 571; *see also Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 339 (5th Cir. 2014) ("[T]he so-called 'waste' of judicial resources that occurs when we dismiss a case for lack of jurisdiction is the price that we pay for federalism.") (citations and quotations omitted).

For the reasons stated, we hold that there is no federal question jurisdiction because Rapid's third-party complaint did not raise a federal question. We also hold that Peachtree has not met its burden of establishing complete diversity of the parties, and thus there is no diversity jurisdiction. Because there is neither federal question nor diversity jurisdiction, and thus no subject matter jurisdiction, we vacate the district court's judgment and remand the case with directions to remand the case to the state court from which it was removed.[15]

VACATED and REMANDED.[16]

---

[15] Peachtree suggests that, were we to remand this case to the district court for additional factfinding, it may be able to determine the citizenship of the entities whose citizenship as it existed at the time of removal is currently unknown. Peachtree and its parent company, the J.G. Wentworth Corporation, are sophisticated entities represented by a large, multinational law firm. Peachtree admitted in its supplemental brief filed on December 28, 2016, that "[d]espite expending considerable resources and diligently endeavoring to determine the constituency of [the unknown-citizenship entities at the time of removal], [Peachtree] cannot feasibly trace each investing entity back to a corporation or a natural person." Peachtree has not, in the months since, supplemented the record or otherwise indicated that it has ascertained, or will be ever able to ascertain, the citizenship of those unknown-citizenship entities. Nor has it explained how remand will allow it to obtain information that is not currently available. Accordingly, remand to the district court for this purpose only forestalls the ultimate dismissal of the case as we have discussed above.

[16] All pending motions are denied as moot.