# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2025

Lyle W. Cayce
Clerk

—————————

No. 24-50101

—————————

PNC Bank, National Association, as limited partner in 2013 Travis Oak Creek, L.P.; Columbia Housing SLP Corporation, as limited partner in 2013 Travis Oak Creek, L.P.,

*Plaintiffs—Appellees*,

*versus*

2013 Travis Oak Creek, L.P.,

*Plaintiff—Appellant*,

and

2013 Travis Oak Creek General Partner, L.L.C.; 2013 Travis Oak Developer Incorporated; Chula Investments Limited; Rene O. Campos,

*Defendants—Appellants*.

—————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:24-CV-30

—————————————————————

Before Smith, Higginson, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

No. 24-50101

Disputes arising from alleged breaches of a partnership agreement resulted in a lawsuit that the parties ultimately resolved by settlement. The case was thereafter re-opened so that the parties could file competing motions to enforce the settlement agreement. The district court severed from the original lawsuit the motions to enforce and granted each motion in part, offsetting the balance owed. This appeal followed. Because the parties have failed to establish an independent jurisdictional basis for the severed motions, we REMAND for the limited purpose of determining whether such jurisdiction exists.

**I.**

In 2014, PNC Bank, N.A., ("PNC Bank") and Columbia Housing SLP Corporation ("Columbia") (collectively, the "PNC Parties"), and Rene O. Campos, as limited partners, along with 2013 Travis Creek GP, LLC, as general partner, entered into an Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP ("Partnership Agreement"). The purpose of the Partnership was to acquire, construct, develop, and operate an affordable housing apartment complex located in Austin, Texas, for which the Partnership anticipated certain federal tax credits would be available.

A few years later, a mechanic's lien was placed on the property and the Partnership defaulted on its construction loan. *See PNC Bank, N.A. v. 2013 Travis Oak Creek GP, LLC*, No. 1:17-cv-584-RP, 2017 WL 11668763, at *2–3 (W.D. Tex. Aug. 2, 2017). As a result, the PNC Parties sought to remove 2013 Travis Oak Creek GP, LLC from its position as general partner and replace it with Columbia. *See id.* at *3–4. This dispute led to a 2017 lawsuit by the PNC Parties against 2013 Travis Oak Creek GP, LLC, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Campos (collectively, the "Eureka Parties"), in which the PNC Parties asserted a

2

cause of action for breach of contract and sought injunctive and declaratory relief to ensure that Columbia would be general partner.

The PNC Parties filed their lawsuit in the United States District Court for the Western District of Texas, invoking diversity jurisdiction under 28 U.S.C. § 1332. Complaint at 2, *PNC Bank, N.A. v. 2013 Travis Oak Creek GP, LLC*, No. 1:17-cv-584-RP (W.D. Tex. Oct. 7, 2019), ECF No. 1. Though the Partnership was not initially named as a party, the PNC Parties subsequently amended the complaint to add the Partnership as a named plaintiff. *See* Amended Complaint at 1, *PNC Bank, N.A.*, No. 1:17-584-RP (W.D. Tex. June 9, 2017), ECF No. 9.

As to the citizenship of the parties, the amended complaint stated:

> PNC Bank, N.A. is a federally chartered bank with its principal place of business in Pittsburgh, Pennsylvania. It can be served with papers in this matter through its counsel of record.
> Columbia Housing is an Oregon Corporation with its principal place of business in Portland, Oregon. It can be served with papers in this matter through its counsel of record.
> 2013 Travis Oak Creek, LP [the Partnership] is a Texas limited partnership. Its sole general partner is Columbia Housing SLP Corporation and its sole limited partner is PNC Bank, N.A. It can be served with papers in this matter through its counsel of record.
> 2013 Travis Oak Creek GP, LLC is a Texas limited liability company. On information and belief, all its members are citizens and residents of Texas. It can be served with process through its registered agent for service of process, 2001 Agency Corporation, 14160 Dallas Parkway, Suite 800, Dallas, Texas 75254.
> 2013 Travis Oak Creek Developer, Inc. is a Texas corporation with its principal place of business in Dallas, Texas. It can be served with process through its registered agent for

service of process, 2001 Agency Corporation, 14160 Dallas Parkway, Suite 800, Dallas, Texas 75254.

Chula Investments, Ltd. is a Texas limited partnership. Its sole general partner is Chula Management, LLC, a Texas limited liability company. On information and belief, all the limited partners in Chula and all the members in its general partner are Texas citizens and/or residents. Chula can be served with process through its registered agent for service of process, 2001 Agency Corporation, 14160 Dallas Parkway, Suite 800, Dallas, Texas 75254.

Renee O. Campos is a Texas citizen and resident. He can be served with process at his home located at 3637 Binkley Ave., Dallas, Texas 75205 or wherever he may be found.

*Id.* at 1–2 (paragraph numbering omitted).

In 2019, the parties settled the 2017 lawsuit and the district court retained supplemental jurisdiction over the enforcement of the Settlement Agreement. In 2021, the Eureka Parties moved to re-open the case, seeking to enforce the Settlement Agreement against the PNC Parties, which the district court granted. The parties then filed competing motions to enforce their respective obligations under the Settlement Agreement.

After an evidentiary hearing on the motions to enforce, the district court adopted the magistrate judge's Report and Recommendation. In its order adopting the magistrate judge's Report and Recommendation, the district court severed the motions to enforce and created a new case. The district court further granted each motion in part such that the PNC Parties were entitled to recover damages from the Partnership and the Eureka Parties. The Eureka Parties and the Partnership (collectively, "Appellants") appealed.

## II.

The parties agree that the district court had jurisdiction over the motions to enforce the Settlement Agreement because of the court's express retention of jurisdiction to enforce the Settlement Agreement that resolved the 2017 lawsuit. They also assert that we have jurisdiction under 28 U.S.C. § 1291.

Subject matter jurisdiction "keep[s] the federal courts within the bounds the Constitution and Congress have prescribed." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). It "cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). Accordingly, we have an independent obligation to assess our own jurisdiction, notwithstanding the parties' agreement. *See Ruhrgas*, 526 U.S. at 583 ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."). In assessing our jurisdiction at the outset of this appeal, we could not find sufficient allegations or evidence in the record establishing diversity of citizenship. Consequently, we directed the parties to brief the issue. For the reasons below, we conclude that such evidence does not exist in the record, and that the absence of such evidence requires a limited remand.

### A.

Ordinarily, whether the district court had "[s]ubject matter jurisdiction is determined at the time that the complaint is filed." *Carney v. Resolution Tr. Corp.*, 19 F.3d 950, 954 (5th Cir. 1994). But severed claims that were subject to a district court's supplemental jurisdiction pre-severance must have an independent jurisdictional basis once severed. *See Honeywell Int'l, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 431–32 (5th Cir. 2005); *Louisiana v. Am. Nat'l Prop. Cas. Co.*, 746 F.3d 633, 640 (5th Cir. 2014). This is because "[s]everance under [Federal Rule of Civil Procedure] 21 creates

two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action." *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983).

Here, the district court retained supplemental jurisdiction over the enforcement of the Settlement Agreement resolving the 2017 lawsuit. Final Judgment at 2, *PNC Bank, N.A. v. 2013 Travis Oak, GP, LLC*, No. 1:17-cv-584-RP (W.D. Tex. Oct. 7, 2019), ECF No. 203. We therefore must look to the point at which the motions to enforce were severed from the 2017 lawsuit to determine whether the district court had subject matter jurisdiction over the severed motions. *See Honeywell Int'l, Inc.*, 415 F.3d at 432.

As the motions to enforce present no federal question, the only basis for subject matter jurisdiction is diversity jurisdiction. Diversity jurisdiction "exists when the amount in controversy is satisfied and there is complete diversity of citizenship between the parties." *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014); *see* 28 U.S.C. § 1332(a). Parties are completely diverse if "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Where there are LLC or partnership litigants, "[a] party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership." *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017).

The parties contend that complete diversity exists for jurisdictional purposes.[1] In support of this argument, Appellants cite the district court's order granting the PNC Parties' motion for preliminary injunction in the

---

[1] The PNC Parties did not brief the issue of diversity beyond stating their agreement with Appellants' jurisdictional statement. Appellants' jurisdictional statement asserts that the district court had diversity jurisdiction.

2017 lawsuit. In that order, the district court determined, based on the allegations in the amended complaint, that the Eureka Parties—to whom the PNC Parties later assigned their interests in the Partnership under the Settlement Agreement—are Texas citizens, PNC Bank is a Pennsylvania citizen, and Columbia is an Oregon citizen. *See PNC Bank, N.A.*, 2017 WL 11668763 at *5.

Appellants also cite the signature page of the first amendment to the Settlement Agreement for the assertion that the record shows Campos is the sole member of 2013 Travis Oak Creek GP, LLC, and the sole member of the entity that is the general partner of Chula Investments, Ltd. They concede, however, that the record contains no evidence of whether Chula Investments, Ltd., has other members. Still, they point out that in the 2017 lawsuit, the district court "accepted" the allegation in the amended complaint that "[o]n information and belief, all the limited partners in Chula and all the members in its general partner are Texas citizens and/or residents." At oral argument, the PNC Parties further pointed to a Report and Recommendation in a separate case they initiated in state court, where the magistrate judge recommended remand based, in part, on the implicit finding that Chula Investments, Ltd. was a Texas citizen.

To the extent that Appellants offer as record evidence of jurisdiction the district court's findings in the 2017 lawsuit based on the amended complaint filed in that case, we reject such evidence. As discussed, severance creates an independent, discrete action. *See O'Neil*, 709 F.2d at 368. Thus, allegations in the amended complaint from the 2017 lawsuit, and the district court's findings in the 2017 lawsuit based on those allegations, do not form part of the record in the case now before us. That leaves the signature page of the first amendment to the Settlement Agreement. This page, however, concerns only 2013 Travis Oak Creek GP, LLC, and Chula Investments, Ltd., and purports to establish their citizenship by identifying their shared

member, Campos—a party whose citizenship is not otherwise established by the record.[2]  The signature page also says nothing of whether Chula Investments, Ltd. has other members.  Accordingly, the record is devoid of evidence establishing an independent basis for jurisdiction over the severed motions to enforce the Settlement Agreement.

## B.

In the absence of any record evidence as to whether jurisdiction exists, but where there is reason to believe that it does, we may remand to the district court for the parties to amend the pleadings or supplement the record to support diversity jurisdiction.  *See Seguin v. Remington Arms Co., L.L.C.*, 22 F.4th 492, 495–96 (5th Cir. 2022) (citing *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310 (5th Cir. 2019)).  Alternatively, we may take judicial notice of jurisdictional facts "not subject to reasonable dispute." FED. R. EVID. 201(b)); *see MidCap Media Fin., L.L.C.*, 929 F.3d at 315 (citing *Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516, 519 (5th Cir. 2015)).

The lack of record evidence notwithstanding, there is reason to believe jurisdiction exists.  The PNC Parties asserted diversity jurisdiction in the 2017 lawsuit, and—before now—the citizenship of the non-Partnership parties was not at issue.  *See Molett v. Penrod Drilling Co.*, 872 F.2d 1221, 1228 (5th Cir. 1989) (finding remand, rather than dismissal for lack of jurisdiction, appropriate where "diversity of the parties was never materially at issue").  However, as between remand and judicial notice, we

---

[2] We further note that the signature page of the first amendment to the Settlement Agreement indicates that Campos is the "Sole *Authorized* Member"—not the sole member—of Travis Oak Creek GP, LLC, and the entity that is general partner of Chula Investments, Ltd.  (emphasis added).  This leaves open the possibility that these entities have other members, whose citizenship the record does not identify.

must remand because we may not take judicial notice of the facts offered by the parties to resolve jurisdiction.

Under Federal Rule of Evidence 201, a court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). Accordingly, we have previously taken judicial notice of jurisdictional facts drawn from public records. *See Swindol*, 805 F.3d at 519 (taking judicial notice of litigant's principal place of business stipulated to by the parties and publicly available on state agency websites); *Statin v. Deutsche Bank Nat'l Tr. Co.*, 599 F. App'x 545, 547–48 (5th Cir. 2014) (taking judicial notice of a county appraisal to remand for the purposes of determining the amount in controversy); *see also Kaufman v. Western Union Tel. Co.*, 224 F.2d 723, 725 (5th Cir. 1955) (implicitly taking judicial notice of Western Union's state of incorporation as set forth in the 1950 edition of the Encyclopedia Britannica).

But the parties do not point to public records to establish jurisdiction. Instead, they offer factual findings from separate, but related, cases. In *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 831 (5th Cir. 1998), we declined to squarely determine the permissibility of taking judicial notice of another court's factual findings. There, the plaintiff argued that the district court should have taken judicial notice of another district court's holding affirmed by the Tenth Circuit in *Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982), that an institution allegedly acquired by defendant Charter Medical was a state actor for purposes of § 1983. *See Taylor*, 162 F.3d at 829. According to the plaintiff, the district court abused its discretion by failing to take judicial notice of this finding because it satisfied Rule 201's requirement that its accuracy could not be reasonably questioned. *Id.*

In rejecting the plaintiff's argument in *Taylor*, we observed the different approaches adopted by our sister circuits on the issue of taking judicial notice of factual findings by other courts. *Id.* at 829–30. The Second, Eighth, and Eleventh Circuits hold that a court may take judicial notice of a document filed in another court to establish a fact of such litigation and related findings, but a court cannot take judicial notice of the factual findings of another court. *Id.* at 830 (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388–89 (2d Cir. 1992); then *Holloway v. A.L. Lockhart*, 813 F.2d 874, 878–79 (8th Cir. 1987); and then *United States v. Jones*, 19 F.3d 1549, 1552 (11th Cir. 1994)). The Seventh Circuit takes a similar, but not identical approach, holding that while courts generally may not take judicial notice of factual findings from other proceedings for the truth asserted therein, a court may take judicial notice of such findings that satisfy Rule 201's indisputability requirement. *Id.* at 830 (citing *Gen. Elec. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081–83 (7th Cir. 1997)).

We found it unnecessary to articulate our own perspective on this issue in *Taylor* because the *Milonas* court's state actor determination was not indisputable.[3] *Id.* Indeed, it had been disputed by the parties in *Milonas*. We explained that this "determination simply was not the type of 'self-evident truth that no reasonable person could question, a truism that approaches platitude or banality,' as required to be eligible for judicial notice under Rule 201." *Id.* (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 347 (5th Cir. 1982)) (alterations omitted). Moreover, we noted that it would be difficult to "conceiv[e] of an adjudicative fact found in a court record that is not [the] subject of reasonable dispute." *Id.* at 830 n.18. Such a fact, we

---

[3] We also held that because a court's state actor determination is a mixed question of law and fact, the finding that Charter Medical's entity was a state actor was not an "adjudicative fact" within the meaning of Rule 201. *Taylor*, 162 F.3d at 830–31.

observed, "would have to obtain its 'indisputable' status from some source other than a court's imprimatur in the form of a factual finding." *Id.*

Given these observations, it should come as no surprise that we have since interpreted *Taylor* to bar requests to take judicial notice of factual findings by other courts. *See Whitaker v. Collier*, 862 F.3d 490, 496 n.10 (5th Cir. 2017) (relying on *Taylor* to explain that the plaintiff correctly noted that our court may not take judicial notice of another court's factual findings); *accord Lewis v. Danos*, 83 F.4th 948, 954–55 (5th Cir. 2023) (citing *Taylor* for the proposition that judicial notice is only appropriate for facts not subject to reasonable dispute and declining to take judicial notice of district court rulings on a protective order to prove specific contentions rather than the fact of such ongoing litigation). We have even held that a court may not take judicial notice of its own previous orders in proceedings concerning the same defendant where the plaintiff asks the court to take judicial notice of factual findings, rather than the fact of such litigation. *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007).

In light of *Taylor* and its progeny, presented with the choice between remand and judicial notice, we must remand. Appellants offer the district court's order for its specific factual findings that the Eureka Parties are Texas citizens, PNC Bank is a Pennsylvania citizen, and Columbia is an Oregon citizen. *See PNC Bank, N.A.*, 2017 WL 11668763 at *5. The PNC Parties, for their part, offer a Report and Recommendation for its implicit finding that Chula Investments, Ltd. is a Texas citizen. *See PNC Bank, N.A.*, 2018 WL 4354316 at *1. Because the factual findings of another court cannot overcome Rule 201's indisputability requirement, we decline to take judicial notice of such facts here.

Additionally, to the extent that Appellants offer the allegations in the amended complaint underlying the district court's citizenship findings, we

note that even assuming such allegations satisfied Rule 201's indisputability requirement, they fail to establish jurisdiction.

The principal defect stems from the amended complaint's allegations of citizenship "on information and belief."[4]  *PNC Bank, N.A.*, 2017 WL 11651508.  In *Jones v. Newton*, 775 F.2d 1316, 1317–18 (5th Cir. 1985) (per curiam), we considered whether a removal notice verified on counsel's information and belief was sufficient to support removal.  At that time, 28 U.S.C. § 1446(a) specified that a petition for removal must be verified, but did not articulate the kind of verification required.  *Id.* at 1317.  We determined that although verification on the defendant's information and belief was preferable, verification on counsel's information and belief was sufficient for removal.  *Id.* at 1317–18.  As § 1446(a) no longer subjects removal petitions to a heightened verification requirement, it follows that allegations based on information and belief may establish jurisdiction.[5]

This interpretation of *Jones* is aligned with decisions from other circuits that have addressed this issue and concluded that jurisdictional facts may be alleged on information and belief.  *See Lewis v. Rego Co.*, 757 F.2d 66, 69 (3d Cir. 1985); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 194–95 (4th Cir. 2008); *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010); *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087–88

---

[4] The amended complaint states that all members of 2013 Travis Oak Creek GP, LLC are Texas citizens "on information belief," and all members of Chula Investments, Ltd. are Texas citizens "and/or" residents "on information and belief."  Amended Complaint at 2, *PNC Bank, N.A.*, No. 1:17-584-RP (W.D. Tex. June 9, 2017), ECF No. 9.

[5] In an unpublished decision, a panel of our court determined, citing *Jones*, that citizenship allegations based on information and belief were sufficient to establish diversity jurisdiction for removal where the plaintiffs failed to demonstrate that the allegation was incorrect.  *Volentine v. Bechtel, Inc.*, 209 F.3d 719, *2 (5th Cir. 2000) (unpublished table decision).

(9th Cir. 2014).   Like *Jones*, however, these decisions concern allegations made at the early stages of litigation.  *See Lewis*, 757 F.2d at 69 (considering a petition for removal); *Ellenburg*, 519 F.3d 192, 194–95 (considering a removal notice); *Med. Assur. Co.*, 610 F.3d at 376 (considering allegations in an amended complaint where the district court stayed the case before it could proceed to the merits); *Carolina Cas. Ins. Co.*, 741 F.3d at 1087–88 (considering allegations in a motion to reconsider dismissal of a complaint). There is nothing in *Jones*, or the decisions of other circuits, to suggest that jurisdictional allegations on information and belief are unconditionally sufficient.  The Seventh Circuit in *Medical Assurance Co., Inc.*, for example, considered it "obvious[]" that "if information to the contrary emerges on remand, the district court must stand ready to re-evaluate its jurisdiction." 610 F.3d at 376.  Similarly, the Ninth Circuit, in *Carolina Casualty Insurance Co.*, specifically tied its holding to cases where the facts supporting jurisdiction are not ascertainable by the plaintiff after reasonable investigation.  741 F.3d at 1087.

While it may be sufficient to allege jurisdiction on information and belief in the nascency of litigation or where the party asserting jurisdiction is unable to ascertain jurisdictional facts with reasonable certainty, that is not the case here.  Appellants do not assert that they lack the necessary information to plead citizenship with more certainty, and the parties had been engaged in litigation for over five years when the severed motions to enforce were filed.  Thus, something more than "information and belief" is needed to sufficiently establish jurisdiction for the severed motions to enforce.

Taking judicial notice of the allegations in the amended complaint would not resolve jurisdiction.  For this additional reason, we must remand.

No. 24-50101

## III.

The parties have presented insufficient evidence of diversity jurisdiction for the severed motions to enforce.  Accordingly, we REMAND to the district court for the limited purpose of determining whether diversity jurisdiction exists.  *See SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 409 (5th Cir. 2023).  The parties need not file a new notice of appeal; the clerk of the district court need only supplement the appellate record with copies of the new filings below and the district court's opinion on jurisdiction.  *See id.* Upon return to this court, no further briefing will be necessary unless a party elects to appeal the district court's finding of jurisdiction, in which case supplemental letter briefs may be filed addressing this issue on a short briefing schedule to be established by the Clerk of this court.  The panel retains jurisdiction over this limited remand.  *See id.*